IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D.M., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-00606-N |
| | § | |
| DUNCANVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses defendant Duncanville Independent School District's ("DISD") motion to dismiss [6]. Because plaintiff D.M. has not pled sufficient plausible facts to support her claims for municipal liability under 42 U.S.C. § 1983 or hostile educational environment under section 504 of the Rehabilitation Act, and because D.M. has abandoned her claim under the Texas Human Resources Code ("THRC"), the Court grants DISD's motion. The Court further grants D.M. leave to amend her complaint following this Order.

### I. ORIGINS OF THE DISPUTE

This case involves claims by D.M., a child with disabilities, against her school district, DISD, stemming from two incidents that resulted in injuries to D.M.'s legs. D.M. has cerebral palsy, autism, developmental delay, and speech issues. Pl.'s First Am. Compl. ("FAC") ¶ 7 [5]. Because of her disabilities, D.M. requires one-on-one supervision throughout the day. *Id.* In December 2022, while walking to the school bus with her aide,

MEMORANDUM OPINION AND ORDER – PAGE 1

D.M. tripped on damaged pavement resulting in a torn meniscus in her right knee. *Id.* ¶ 8. She alleges this hazard was well known to DISD staff because they had previously received a repair request for that section of pavement. *Id.* D.M.'s physicians recommended that she receive additional accommodations at school as a result of this incident, including the use of a wheelchair and the use of a different pathway to the school bus. *Id.* ¶ 9. D.M. alleges DISD did not implement these additional accommodations. *Id.* ¶ 10.

Then, D.M. alleges that approximately two weeks later when she was insufficiently supervised at school, she attempted to walk despite her injured knee, and she fell. *Id.* As a result of this second incident, D.M. suffered a torn meniscus, torn anterior cruciate ligament ("ACL"), and a tibial spine fracture all in her other (left) knee. *Id.* ¶ 11. As a cumulative result of these two incidents, D.M. is now wheelchair bound and unable to walk independently. *Id.* She suffers ongoing pain and psychological distress stemming from these incidents and the loss of her ability to move without assistance. *Id.* ¶ 13.

In this lawsuit, D.M. brings claims under 42 U.S.C. § 1983 for violations of her due process and equal protection rights; claims for hostile educational environment[1] and failure to accommodate under section 504 of the Rehabilitation Act; a claim for failure to accommodate under the Americans with Disabilities Act ("ADA"); and a claim for failure to accommodate under the THRC.

---

[1] D.M. refers to this claim as a "failure to keep safe" claim. Given that other courts in this circuit refer to this type of claim as one for hostile educational environment, the Court will use that term. *See, e.g.*, *Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 480 (5th Cir. 2021) (unpub.) (per curiam); *Bryant v. Dayton Indep. Sch. Dist.*, 2021 WL 3555947, at *8 (S.D. Tex. 2021).

MEMORANDUM OPINION AND ORDER – PAGE 2

DISD now moves to dismiss all claims except for D.M.'s failure to accommodate claims under the Rehabilitation Act and the ADA. Def.'s Br. 1 n.1 [7]. Specifically, it seeks dismissal of D.M.'s THRC claim for lack of subject matter jurisdiction under Rule 12(b)(1), and dismissal of the remaining claims for failure to state a claim under Rule 12(b)(6). *Id.* at 4, 8, 13. D.M. has abandoned her THRC claim, *see* Pl.'s Resp. 2 n.1 [13], and so the Court dismisses this claim without prejudice accordingly. Then, the Court proceeds to consider the remaining claims under the Rule 12(b)(6) standard.

## II. LEGAL STANDARD FOR RULE 12(B)(6)

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, a "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, in "deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that the "district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand").

**III. THE COURT GRANTS DISD'S MOTION TO DISMISS D.M.'S SECTION 1983 CLAIMS**

D.M., as the plaintiff, must plead sufficient plausible facts in support of each claim in order for her claims to survive a motion to dismiss under Rule 12(b)(6). Because D.M. has not pled sufficient plausible facts demonstrating that DISD acted with deliberate indifference to D.M.'s constitutional rights, the Court grants DISD's motion to dismiss D.M.'s claims for municipal liability under section 1983.

To make a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quotations omitted). The Court first evaluates the sufficiency of D.M.'s constitutional violation allegations and then turns to the issue of municipal liability.

### *A. D.M. Adequately Pleads a Due Process Violation*

The Due Process Clause protects against governmental invasion of a student's liberty interest in bodily integrity. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc). Deliberate indifference to the student's constitutional rights can be sufficient to state a claim for a due process violation. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 198 (5th Cir. 2015) (per curiam). Acts "by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton*, 168 F.3d at 201.

Here, D.M. alleges her school aide (a state actor) caused her to walk over known damaged pavement, injuring her knee. FAC ¶ 8. Then she asserts the school failed to

MEMORANDUM OPINION AND ORDER – PAGE 5

implement necessary accommodations, and failed to adequately supervise her, resulting in severe injury to her other leg. *Id.* ¶¶ 10–11. These injuries to a disabled child based on the acts (or omissions) of school employees are sufficient to establish a violation of D.M.'s due process right to bodily integrity. Making a child with disabilities walk over known damaged pavement is sufficient to create an inference of deliberate indifference to the risk to the disabled child. And further, failing to implement accommodations after the first injury and failing to sufficiently supervise the child resulting in further, more severe injuries, also is sufficient at this stage to raise the plausible inference of deliberate indifference to D.M.'s bodily integrity by school staff. Accordingly, D.M. has adequately pled that she suffered a violation of her due process rights.

### B. D.M. Does Not Adequately Plead an Equal Protection Violation

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Thus, a plaintiff must demonstrate that he or she has been treated differently due to membership in a protected class and that the unequal treatment stemmed from a discriminatory intent. *See Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 228 (5th Cir. 2008).

"Class-of-one equal-protection claims are an application of the principle that the seemingly arbitrary classification of a group or individual by a governmental unit requires a rational basis." *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 587 (5th Cir. 2016) (cleaned up) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008)). To state a "class of one" claim under the Equal Protection Clause, the plaintiff must allege

MEMORANDUM OPINION AND ORDER – PAGE 6

that: (1) the defendant intentionally treated the plaintiff differently from others similarly situated, and (2) the defendant lacked a rational basis for the difference in treatment. *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012).

Here, D.M. argues that "as compared to her non-disabled peers, she was intentionally denied the opportunity for a safe, non-hostile environment" and that she was essentially required to walk over damaged pavement — something "other, non-disabled students were not subject to." Pl.'s Resp. 7. D.M. relies on this argument to support a class-of-one equal protection claim. *See* FAC ¶ 19. However, D.M. fails to allege how the other nondisabled students were similarly situated to her or treated differently from her.

The complaint states that the damaged pavement was not blocked off from any students, meaning that nondisabled students would have the option to walk on that damaged pavement. *See* FAC ¶ 8. But if all students could walk on the damaged pavement, the only difference in treatment between D.M. and the other students is that D.M. did not have choice in whether to walk on the damaged pavement. And D.M. asserts that this lack of choice is a result of her preexisting disability accommodations. *See* Pl.'s Resp. 7 ("D.M. could not traverse the school environment independently even prior to her injuries . . . . [She] had no choice but to take the route that her aides and teachers took her on, where she was severely injured."). This means the nondisabled peers are not similarly situated to D.M. Perhaps if D.M. alleged that another student walking with an aide was never made to walk over the damaged pavement, that could be sufficient to establish a difference in treatment of a similarly situated comparator. But she makes no such allegations. And further, D.M. fails to plead enough facts that show the school lacked a rational basis in any

MEMORANDUM OPINION AND ORDER – PAGE 7

different treatment she received. Thus, D.M.'s general allegation that her nondisabled peers were treated differently is not sufficient to state a class-of-one equal protection claim. *See Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit."). Accordingly, the Court concludes that D.M. has failed to allege a violation of her constitutional equal protection rights.

### *C. D.M. Does Not Adequately Plead Municipal Liability*

D.M. has named only one defendant in this case — DISD. School districts, such as DISD are equivalent to municipal entities, and therefore D.M. must meet the additional, stringent requirements under *Monell* to establish liability under section 1983. *E.g.*, *Doe*, 15 F.3d at 452–52.

Plaintiffs may bring section 1983 claims against municipalities, but the statute does not permit vicarious liability. *Monell v. Dep't. of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). First, as in all section 1983 cases, Plaintiffs must "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quotations omitted). But under *Monell*, municipal liability also requires that an official policy or custom, promulgated by a final policymaker, be the moving force behind the violation of a constitutional right. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163, 165–66 (5th Cir. 2016).

There are two ways of defining an "official custom or policy" for the purposes of *Monell* liability:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)). When proceeding under the custom prong, the precise identity of a policymaker is a question of law, but a plaintiff must still allege that "'actual or constructive knowledge of such custom' is attributed to a . . . policymaker." *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (cleaned up) (quoting *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017)).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In addition to proving a constitutional violation, Plaintiffs must also "prove that (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson v. Dallas County.*, 994 F.3d 477, 482 (quoting *Peña*, 879

MEMORANDUM OPINION AND ORDER – PAGE 9

F.3d at 623). The standard for municipal fault is stringent, and deliberate indifference ordinarily requires a "pattern of similar constitutional violations by untrained employees." *Peña*, 879 F.3d at 623 (quoting *Connick*, 563 U.S. at 62). But even without a pattern, it is still possible to establish deliberate indifference through the single-incident exception. *Id.* at 624.

The single-incident exception is "extremely narrow." *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010). The "plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* (cleaned up). For a violation to be "highly predictable," the municipality "must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624–25 (cleaned up). The Fifth Circuit has "been wary of" finding municipal liability for failure to train claims based on single incidents. *Pineda*, 291 F.3d at 334–35. Single violations create liability in only the most egregious cases, such as where the dangerous "proclivities" of an officer impute knowledge to the government that existing training is insufficient, *see Valle*, 613 F.3d at 549 (citing *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000)), or where an obvious need for training exists, but the officer "was provided no training whatsoever." *Peña*, 879 F.3d at 624.

Here, D.M. alleges that the DISD School Board failed to supervise and train school staff on the "professional standards of care for providing services to special education students." FAC ¶¶ 21–22. And D.M. argues that this failure to train and supervise constituted deliberate indifference to D.M.'s constitutional rights. *Id.* However, D.M. has

MEMORANDUM OPINION AND ORDER – PAGE 10

not sufficiently alleged a pattern of similar constitutional violations and has not met the requirements for the single-incident exception, and therefore D.M. cannot establish that the school board acted with deliberate indifference to D.M.'s constitutional rights.

The only allegation in the live complaint that comes close to alleging a pattern of similar constitutional violations is the fact that D.M. was twice injured under the care of school staff. *See* FAC ¶¶ 8–11; Pl.'s Resp. 9. However, the Court concludes that these allegations do not amount to a pattern of similar constitutional violations required to establish deliberate indifference. In theory, it could be possible for two incidents to form a "pattern," as two is greater than one, but under the circumstances here the two incidents involving D.M. do not meet the "stringent" requirements for deliberate indifference. *See Peña*, 879 F.3d at 623. The conduct by school staff is not very similar between the two incidents — choosing to walk D.M. over damaged pavement versus insufficiently supervising D.M. in a classroom. And D.M. does not allege that any other student was subject to similar constitutional violations by DISD staff. Thus, because D.M. does not successfully allege a pattern of similar constitutional violations, she can only succeed under the narrow single incident exception.

And to that point, the Court concludes that the single-incident exception does not apply in this case. This is not a situation where the dangerous "proclivities" of school staff could impute knowledge to the school board that the existing training is insufficient. *See Valle*, 613 F.3d at 549. And neither does D.M. allege that there was an obvious need for training and school staff were provided no training whatsoever. *See Peña*, 879 F.3d at 624. D.M. does argue that this exception applies here because "there is an absolute inference

MEMORANDUM OPINION AND ORDER – PAGE 11

staff were not trained at all" in this case. Pl.'s Resp. 8. However, there are not sufficient factual allegations in the complaint to support an "absolute inference" that staff were completely untrained.

The single-incident exception for failure to train claims requires that the municipality "failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *See Littell*, 894 F.3d at 624–25 (cleaned up). The complaint includes a conclusory assertion that the school district failed to train its employees on the "professional standards of care for providing services to special education students," FAC ¶¶ 21–22, but it contains no factual allegations to support an inference that the failure was complete, or that the training failure concerned a situation "implicated in recurrent situations that a particular employee is certain to face." *See Littell*, 894 F.3d at 624–25 (cleaned up). Accordingly, the Court concludes that D.M. has failed to sufficiently allege deliberate indifference on the part of DISD, and therefore the Court grants DISD's motion to dismiss D.M.'s section 1983 claims.

### IV. THE COURT GRANTS DISD'S MOTION TO DISMISS D.M.'S HOSTILE EDUCATIONAL ENVIRONMENT CLAIM

Along with her section 1983 claims, D.M. brings a claim for disability discrimination under section 504 of the Rehabilitation Act, alleging that DISD has failed to provide her with a nonhostile educational environment. However, because D.M. has not sufficiently alleged severe and pervasive harassment, or deliberate indifference, the Court grants DISD's motion and dismisses this claim.

To state a claim for hostile educational environment, the plaintiff must allege:

> (1) he was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) defendant knew about the harassment, and (5) defendant was deliberately indifferent to the harassment.

*Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014) (cleaned up) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 454 (6th Cir. 2008)).[2] A hostile-environment claim requires that the plaintiff allege facts that could plausibly show continuous, nonepisodic abuse. *Thymes v. AT&T Mobility Servs., LLC*, 2019 WL 1768311, at *8 (W.D. La. 2019), *adopted by*, 2019 WL 1757864 (W.D. La. 2019).

Courts look to the following factors when evaluating whether the purported harassment was severe or pervasive enough to support a hostile educational environment claim:

> (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; (4) whether the conduct interferes with educational performance; and (5) whether the complained-of conduct undermines the plaintiff's educational competence.

---

[2] Some district courts in this circuit have questioned whether the Fifth Circuit recognizes hostile educational environment claims under the Rehabilitation Act or the ADA. *See, e.g.*, *Doe v. Tex. A&M Univ.*, 634 F. Supp. 3d 365, 383 (S.D. Tex. 2022) ("The Fifth Circuit has not determined whether hostile educational environment claims are cognizable under the RA or the ADA." (citing *Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 487 n.6 (5th Cir. 2021) (unpub.) (per curiam))). This question appears to arise from an unpublished decision in which the Fifth Circuit declined to address the issue of whether such claims are cognizable. *See Harrison*, 856 F. App'x at 487 n.6 ("Because we find the deliberate indifference element unmet here, we need not determine whether our precedent supports a hostile educational environment claim under the ADA or Rehabilitation Act."). However, it is not necessary to address this issue here because, even assuming that D.M.'s claim is cognizable, she fails to allege sufficient facts in support of her claim.

*Doe v. Tex. A&M Univ.*, 634 F. Supp. 3d 365, 385 (S.D. Tex. 2022). "The alleged harassment must be so severe and pervasive that it destroys the student's opportunity to succeed in the school, and it must be more than rude or offensive comments, teasing, or isolated incidents." *Id.* (citing *Bryant v. Dayton Indep. Sch. Dist.*, 2021 WL 3555947, at *8 (S.D. Tex. 2021))

Here, the gravamen of D.M.'s complaint is not persistent harassment by school staff, but lack of proper supervision. These two incidents alleged in D.M.'s complaint do not establish severe or pervasive harassment that could make out a hostile educational environment claim. There were only two incidents, and the severity of the conduct — failing to supervise — is not as high as it would be in a case of actual harassment. The conduct by school staff did result in severe injuries, but the conduct itself is closer to negligence than harassment. And it was neither humiliating nor threatening in the manner contemplated by a hostile environment claim. Thus, even though D.M.'s injuries did undermine her educational competence by forcing her to miss some amount of school, the remaining factors all indicate that the school staff's conduct did not amount to severe or pervasive harassment.

Additionally, D.M. would also have to establish that the school district was deliberately indifferent to any purported harassment. D.M. bases both her section 1983 claims and her hostile environment claim on the exact same conduct. And the Court has already determined that DISD did not act with deliberate indifference for failure to train its staff in this case. Therefore, for lack of severe and pervasive harassment and alternatively

for lack of deliberate indifference, the Court grants DISD's motion to dismiss D.M.'s hostile educational environment claim under section 504 of the Rehabilitation Act.

## CONCLUSION

Because D.M. has not pled sufficient plausible facts to support her claims for municipal liability under section 1983 or hostile educational environment under the Rehabilitation Act, the Court grants DISD's motion to dismiss those claims. And because D.M. has abandoned her THRC claim, the Court also grants the motion to dismiss that claim. Further, the Court grants D.M. leave to amend her complaint within 30 days of this Order. If D.M. does not amend her complaint within 30 days, the Court will dismiss her section 1983 claims and her hostile educational environment claim with prejudice without further notice.

Signed January 7, 2025.

David C. Godbey
Chief United States District Judge